UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:12-53-DCR-1 |
| | ) | Civil Action No. 6:14-7372-DCR |
| v. | ) | |
| | ) | |
| TODD J. BROCK, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On October 6, 2014, Todd J. Brock, *pro se*, filed a Motion To Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (R. 436). In his Motion, Brock asserted four claims of ineffective assistance of counsel, but has since withdrawn all claims except that raised in Ground One–that counsel was constitutionally ineffective for not filing a notice of appeal despite his instruction to do so and for not consulting with him regarding an appeal.[1] (*Id*.; R. 455; R. 463). On December 3, 2014, the United States filed a Response to Defendant's § 2255 Motion, which attached an Affidavit of trial counsel Andrew M. Stephens, to which Defendant filed a Reply. (R. 451, 455).

Finding the filings revealed a factual dispute, the Court appointed Attorney Patrick Nash as counsel for Defendant and held an evidentiary hearing on March 26, 2015, on the limited issue surrounding Brock's remaining claim of ineffective assistance of counsel. (R. 465, 475, 480). After a review of the complete record as well as the testimony and argument at the evidentiary hearing, the Court recommends, for the reasons set forth below, that Brock's § 2255 Motion be denied.

---

[1]The presiding District Judge has now dismissed with prejudice the withdrawn claims. (R. 464).

## I.      Background

On October 1, 2012,  a criminal Complaint was filed against Defendant Brock, charging him with possession with intent to distribute pills containing oxycodone.  (R. 1).  On October 25, 2012, a federal grand jury returned a sixteen-count Indictment against eleven Defendants, including Brock. (R. 17).  Brock was charged in fourteen of the sixteen counts, including charges for engaging in a continuing criminal enterprise, conspiracy to distribute oxycodone, conspiracy to distribute methadone, conspiracy to distribute alprazolam, aiding and abetting the distribution of oxycodone, distributing oxycodone, possession of a firearm after having been convicted of a felony and possession of a firearm in furtherance of drug trafficking, as well as forfeiture allegations.  (*Id*.).

On June 14, 2013, pursuant to a written Plea Agreement (R. 267), Brock entered a plea of guilty to Count Two, conspiracy to distribute oxycodone, as well as the forfeiture count, and the Government agreed to move to dismiss the remaining counts at sentencing.  (R. 265).  The Plea Agreement recites that Brock sold 300 oxycodone pills to law enforcement agents during the time frame set forth in the Indictment, but that the parties do not have an agreement concerning the amount of illegal drugs to be attributed to Brock as relevant conduct.  (R. 337, at 2 ¶ 3(d)-(f)).  Nor did the parties agree on any specific Guidelines calculations in the Plea Agreement; instead, the parties agreed they could argue their respective positions regarding the calculations at sentencing. (*Id*. at 3 ¶5).  Further, in the Plea Agreement, Defendant waived his right to appeal the guilty plea and conviction, but retained the right to appeal his sentence.  (R. 337, at 3-4 ¶7).

On October 4, 2013, Defendant appeared for sentencing.  (R. 342, 441).  During the sentencing hearing, the Court heard testimony from DEA Agent Vince Kersey and argument of counsel on Brock's Objection to the Probation Office's recommendation of a four-level increase for

having a leadership role in the offense under § 3B1.1(a) of the United States Sentencing Guidelines (U.S.S.G.).  After considering the evidence presented and hearing argument of counsel, the Court found the enhancement applicable because evidence established Brock directed the activities of at least one person.  (R. 441, at 24-36).  Specifically, District Judge Reeves found the evidence established Brock directed the activities of not only his wife and co-Defendant Leslie Brock, but others as well.  *Id*.  Thus, the Court found the Guidelines range was correctly calculated at a level 35.  Accordingly, Judge Reeves explained to Brock that the statutory maximum sentence he faced was 240 months, and the Guidelines range was 168 to 210 months.  (R. 441, at 36-38, 54).

The presiding District Judge discussed consideration of an above Guidelines range sentence, noting Defendant's criminal history category of I under-represented his actual criminal history due to his prior convictions being old enough not to count against him for calculation purposes.  (R. 441, at 37-38).  The Court ultimately declined to deviate upward.  After a thorough analysis of the sentencing factors of 18 U.S.C. § 3553, the presiding District Judge sentenced Defendant to a within-Guidelines range sentence of 210 months of incarceration with 5 years of supervised release to follow.  (*Id*. at 59-62).

After imposition of sentence, the presiding District Judge instructed the Clerk of Court to advise Defendant of his right to appeal, and Defendant and counsel signed the Court's Advice of Right to Appeal form that set forth in writing Brock's appellate rights, including the fact that a notice of appeal must be filed within 14 days of the date of Judgment.  (R. 441, at 67-69; R. 339).  Defendant was given a copy of the Court's Advice of Right to Appeal.  (R. 441, at 68).  A notice of appeal was not filed.

On April 28, 2014, over 6 months after his sentencing, Brock sent a letter to the Clerk of Court requesting a copy of his docket sheet and the sentencing transcript.  (R. 409).  The docket sheet reflects that in response, the Clerk of Court forwarded Defendant a copy of the docket sheet and an AO240 form, which is an Application to Proceed without Prepayment of Fees.  On May 23, 2014, Brock filed an Application to Proceed without Prepayment of Fees and Affidavit (R. 413), which the presiding District Judge denied as Brock did not have a pending matter before the Court.  (R. 414).  On June 2, 2014, Defendant again wrote the Clerk of Court and also the court reporter requesting the sentencing transcript.  (R. 437-1).  On September 2, 2014, Brock sent a letter to the presiding District Judge requesting the Judge intervene and direct his former attorney to deliver his case file. (R. 432).  The presiding District Judge construed the letter as a motion, and denied it as Brock did not have an action pending before the Court.  (R. 433).

On October 6, 2014, Brock filed the pending § 2255 motion, presenting claims that counsel provided ineffective assistance.  (R. 436).  As discussed above, Brock has withdrawn all claims except for his claim that counsel was ineffective for failing to file a notice of appeal after being instructed to do so.  (R. 436, 464).

## II.   Analysis

Brock asserts in his § 2255 motion that he was denied the effective assistance of counsel by counsel's failure to file a notice of appeal despite Brock's specific instructions for him to do so.  (R. 436, at 5).  In support of his Motion, Brock submitted his affidavit stating that after sentencing, he specifically directed counsel to file a notice of appeal because he believed his sentence was "greater than necessary" to achieve the purpose of sentencing, and counsel "advised" that he would file the notice of appeal.  (R. 436-1, at 2).

4

In general, a defendant asserting ineffective assistance of counsel must show not only that counsel's performance fell below an objective standard of reasonableness, but also that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies to a claim that counsel was ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000); *Regalado v. United States,* 334 F.3d 520, 524-25 (6th Cir. 2003).

### A.      Deficient Performance

It is well-established that where a defendant expressly instructs his counsel to file a notice of appeal and counsel fails to do so, counsel's conduct is objectively unreasonable. *Flores-Ortega,* 528 U.S. at 476-77. Where, however, a defendant has not given his counsel express instructions, the court must ask whether counsel "consulted" with the defendant about an appeal. *Id*. at 478. If counsel has consulted with his client, then counsel cannot be found to have acted unreasonably unless counsel ignored his client's express instructions. *Id*. If, however, counsel has not consulted with his client about an appeal, then counsel's failure to consult is unreasonable if "a rational defendant would want to appeal," or "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. If a court determines counsel's conduct was unreasonable, the defendant must demonstrate that he was prejudiced by the conduct by proving that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

### 1.      Defendant did not give counsel an express instruction to file an appeal

The first factual issue for this Court under *Flores-Ortega* is to determine if Defendant specifically instructed Attorney Stephens to appeal. Here, conflicting testimony was heard at the

evidentiary hearing on this issue. Mr. Stephens testified that after the sentencing hearing, he, Defendant and Defendant's family were all upset over the sentence imposed, and there was a lot of emotion in the courtroom. (R. 484, at 13-14). Mr. Stephens testified that he cannot say definitively one way or the other whether Defendant told him to appeal after the sentencing hearing. (*Id*. at 14, 17). Mr. Stephens testified that if Defendant did tell him to appeal, he did not hear him. (*Id*. at 14). If he had heard Defendant request an appeal, he would have made a note of it in his file, and he would have filed a notice of appeal on his behalf. (*Id*.).

In preparation for the evidentiary hearing, Attorney Stephens reviewed his notes and did not find any notation regarding a request from Defendant for him to file a notice of appeal. (*Id*. at 16-17). Attorney Stephens was careful to say that the fact he did not find the instruction written down in his file does not mean Defendant did not tell him to appeal; Defendant may have told him to appeal, but he just did not hear it. (*Id*. at 14, 16-17). Counsel was certain, however, that if he had heard Defendant say he wanted to appeal, he would have filed a notice of appeal. (*Id*. at 14).

Defendant testified that he was emotional after the sentencing hearing because the sentence imposed was more than double what he thought he was going to receive. (R. 484, at 31). Defendant stated that after the sentencing hearing concluded and before he was taken from the courtroom, he asked counsel "was we going to appeal this?" (*Id*. at 31). On further questioning, Defendant admitted he did not recall the specific wording but stated he asked counsel something similar to: "[h]ow did I . . . [w]ho could I get to appeal it;" "[h]ow could I appeal it;" or "[w]ould he appeal it." (*Id*.). Defendant testified that Mr. Stephens nodded his head and said he would take care of it. (*Id*. at 31-32). On cross-examination, Defendant admitted he could not recall all the details of what happened after the sentencing hearing, but testified that his wording was not a demand that counsel

6

file an appeal. (*Id*. at 35-36). Instead, he testified that he asked "are we going to appeal this" or "something to that effect." (*Id*. at 35).

Defendant testified that he was only in the courtroom for a few minutes after the sentencing hearing but when he left he had no doubt that counsel would file the appeal for him and he was relying on him to do so. (*Id*. at 33). Defendant further testified that had he known counsel was not going to file a notice of appeal, he would have called, or had someone else call, another attorney to make the filing for him. (*Id*.). However, Defendant testified that he believed he could rely on counsel to make the filing because counsel always did what he said he would do; "if he said 'I'll be there on Friday,' then [he'd] be there Friday." (*Id*. at 36-37).

In closing argument at the evidentiary hearing, the United States pointed out that while Defendant stated in his affidavit that he gave a specific instruction to counsel to file a notice of appeal, he testified at the evidentiary hearing that he asked counsel whether they would appeal or if he could appeal. (*Id*. at 47). Defense counsel Nash argued that the differences between Defendant's statements in his Affidavit and his testimony regarding the exact phrase used in his instruction to counsel to appeal had no substantive difference as the history of the case made clear that Defendant wanted to appeal. (*Id*. at 50).

Case law, however, does not support Defendant's argument. Although a defendant may express to counsel his desire to appeal, such expression is not sufficient to meet the requirement that he specifically instruct counsel to file an appeal. *See Regalado v. United States*, 334 F.3d 520, 525-26 & n.3 (6th Cir. 2003) (*citing Roe*, 528 U.S. at 477); *United States v. Taylor*, No. 6:07-12-DCR, 2008 WL 4829873 (E.D. Ky. Nov. 5, 2008); *United States v. Demling*, No. 6:05-30-DCR, 2008 WL 45381, at *4 (E.D. Ky. Jan. 2, 2008) (repeated calls to counsel to let them know he "wanted to

appeal" is an expression of his desire to appeal and does not equate to an actual instruction to file an appeal); *United States v. Hitchcock*, No. 1:08-cr-1-04, 2009 WL 3754394, at *7 (W.D. Mich. Nov. 5, 2009) (defendant's statement that he "wished to exercise right to appeal" or making his "desire to appeal" known is not the same as specifically requesting a notice of appeal be filed). Here, Defendant testified that he did not demand counsel file an appeal, but simply asked if he could appeal or "something to that effect." (*Id.* at 35-36). Thus, while he may have expressed a desire to appeal, he admits he did not specifically instruct counsel to file an appeal. (*Id.*).

Further, the Court credits the testimony of Attorney Stephens, which supports a finding that the discussion relayed by Defendant did not occur at the close of the sentencing hearing. Specifically, Defendant testified that upon asking if he could appeal, counsel replied "I'll take care of it." (R. 484, at 31-32). However, counsel testified that if Defendant had asked him to appeal, he did not hear it, (*id.* at 14), which contradicts Defendant's statement that this exchange occurred. Counsel also explained that it is his practice to write down all of his clients' requests, and a review of his notes did not reveal a request from Defendant that an appeal be filed. (*Id.* at 16-17).

In addition, Defendant testified that his experience with Mr. Stephens led him to believe that he could rely on him to do what he said he would do. (*Id.* at 33, 36-37). This is further support that it is unlikely Attorney Stephens would ignore his client's instructions to appeal. The Court credits the testimony of Mr. Stephens that this verbal exchange did not occur, because had he heard Defendant request that an appeal be taken, he would have filed a notice of appeal. Defendant has not established by a preponderance of the evidence that he specifically directed Mr. Stephens to file an appeal on his behalf. *See Stamper v. United States*, 258 F. App'x 795, 798 (6th Cir. 2007) (affirmed district court's finding that defendant did not meet his burden of proof that he specifically

instructed counsel to file an appeal where defendant stated counsel had "done pretty good" prior to alleged request for appeal and district court found counsel did not give impression during trial of a lawyer who would ignore his client's wishes).

### 2.    Counsel had a constitutional duty to consult with Defendant about an appeal

Once it is determined that a defendant did not specifically instruct his counsel to file a notice of appeal, the court must ask whether that counsel consulted with the defendant about an appeal. The Supreme Court has held that in this context, "consult" has a specific meaning: to "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." *Flores-Ortega,* 528 U.S. at 478.  Here, Attorney Stephens admits he did not consult with Defendant about an appeal after the sentencing, and had only general discussions about the appeal process and what appellate rights Defendant was retaining in the Plea Agreement.[2]  (R. 484, at 15, 18).

Thus, the next question is whether counsel had a constitutionally-imposed duty to consult with Defendant.  The Supreme Court has held that counsel has a duty to consult with a defendant about an appeal if there is reason to think:  "1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or 2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores Ortega*, 528 U.S. at 480.  "In making this determination, courts must take into account all the information counsel

---

[2]Because counsel's pre-sentence discussions about an appeal were more general in nature and not a discussion of the advantages and disadvantages of an appeal or a reasonable effort to determine Defendant's wishes regarding an appeal, this case is distinguishable from *Johnson v. United States*, 364 F. App'x 972, 976-77 (6th Cir. 2010) (finding consultation during course of case sufficient under facts of case where advised slim chance of success on appeal).

knew or should have known." *Id*.  In the circumstance where a defendant has pleaded guilty, a court should consider such factors as whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appellate rights.  *Id*.  The Supreme Court anticipated that courts will find "in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id*. at 48.

Here, the testimony at the evidentiary hearing was consistent that while the Plea Agreement did not set out a specific sentencing recommendation, the sentence received was significantly higher than what Defendant or counsel anticipated.[3]  Defendant testified that he thought he would be sentenced in the range of 6 to 9 years after consideration of such factors as his age, health, the offense being non-violent, his community service and the Court's review of the letters written in support of him.  (R. 484, at 29).  Defendant testified that he learned of the leadership role enhancement on the day of sentencing, but he did not think it would be applied to him.[4]  (*Id*.).

---

[3] While the Plea Agreement did not provide a specific bargained-for sentence, Defendant did receive benefits by entering into the Agreement:  he received a 3-point reduction for acceptance of responsibility, and thirteen counts were dismissed against him, including a charge for engaging in a continuing criminal enterprise, which carried a mandatory minimum of 20 years of imprisonment, and a charge for possession of firearms in furtherance of drug trafficking, which has a mandatory minimum of 5 years that is required to be imposed consecutive to any other term of imprisonment imposed for any other offense.  *See* 21 U.S.C. § 848; 18 U.S.C. §§ 924(c)(1)(A)(i) - (c)(1)(D)(ii).  For purposes of this analysis, however, the Court credits the testimony of both Attorney Stephens and Defendant that the sentence received was not that anticipated, and Defendant and counsel left the sentencing hearing disappointed by the presiding District Judge's application of the leadership role enhancement and a top of the Guidelines sentence.

[4] Counsel's letter to the Probation Officer objecting to the application of U.S.S.G. § 3B1.1(a) in the Presentence Investigation Report for Defendant being a leader or organizer of the criminal activity is dated September 10, 2013.  Defendant's sentencing occurred more than three weeks later on October 4, 2013.  Thus, it is not clear why Defendant would not have learned until the day of his sentencing that there was a possibility he might receive an enhancement for having a leadership role.  The parties did not clarify this issue during the evidentiary hearing, and it will be assumed for purposes of this Report and Recommendation that Defendant's testimony regarding when he learned of the enhancement is accurate.

Counsel testified that even he was somewhat emotional after the sentencing because 210 months "was just a fearsome amount of time for this conduct."  (*Id*. at 14).

Counsel also explained that in negotiating the Plea Agreement he specifically sought to preserve Defendant's right to appeal his sentence. (*Id*. at 5-7).  Counsel explained to Defendant prior to sentencing that the Plea Agreement reserved his right to appeal and that counsel knew there may be issues to appeal if the presiding District Judge did not agree with Defendant's position at sentencing. (*Id*. at 5-7, 12-13, 19-20, 21-22).  Counsel specifically noted that the possible appellate issues included the 4-level enhancement for Defendant having a leadership role.  (*Id*. at 5-9). Counsel also testified that he knew preserving the right to appeal his sentence was important to Defendant in light of the presiding District Judge's proclivities in sentencing matters. (*Id*. at 21-22).

Counsel also testified that upon review of the Presentence Investigation Report ("PSR"), he lodged an objection to the Probation Office's application of the four-level enhancement for Defendant having a leadership role under the aggravating-role enhancement, U.S.S.G. § 3B1.1(a). At sentencing, after taking testimony and hearing argument of counsel, the presiding District Judge found the enhancement applied and he explained his findings.  (R. 441, at 33-36).  Defense counsel testified at the § 2255 evidentiary hearing that there was no question but that the imposition of the leadership enhancement was an issue preserved for appeal, and "it would have made sense for Defendant to ask him to file an appeal."  (*Id*. at 12-13).

The sentencing transcript also reflects that counsel specifically discussed preservation of Defendant's objection to the four-level increase for leadership role with the Court.  (R. 441, at 67). The presiding District Judge asked counsel "[s]o the record's clear, your objection is preserved as

to the four-level increase that we'd discussed previously?" Counsel replied "Yes, sir, that's correct." (*Id.*).

Further, it is uncontested that Defendant was extremely upset after learning his sentence, and after the sentencing hearing, the atmosphere in the courtroom was unsettled. At the evidentiary hearing Attorney Stephens described the situation after Court adjourned as follows:

> You get a man of Mr. Brock's age, and temperament frankly, and you load up on him and you give him a high end and you're critical of his lifestyle, his criminal history, and you overrule what is an arguable application of the leadership [enhancement], and in the melee of the courtroom, you've got people in the back that are families and supporters that are just realizing what 210 months means. You've got a defendant that's looking at 210 months and it's becoming very real. You look at the marshals who, you know, are trying to get--while they're trying to get some courtesy involved in, you know, giving time to say goodbye to family and friends and whatnot, they're trying to get him off to the side and get back in to the hold-over.
>
> Yes, I must admit, I was somewhat emotional. Two hundred and ten months, I thought, was just a fearsome amount of time for this conduct.

(R. 484, at 13-14). Counsel admitted he could not say for sure one way or the other whether Mr. Brock asked him to file an appeal after the hearing. (*Id.* at 14). He testified that, in fact, it would have made sense for Defendant to ask him to appeal. (*Id.*). However, counsel was clear that "if [Defendant] instructed me to file an appeal, I did not hear it; and had he instructed me to file an appeal, I would have filed the appeal." (*Id.*).

A review of the record as a whole thus supports a finding that counsel had a constitutionally-imposed duty to consult with Defendant about an appeal because he knew from their pre-sentence discussions that this Defendant was interested in appealing his sentence if the presiding District Judge did not agree with their position on sentencing and the presiding District Judge did, in fact, reject Defendant's sentencing arguments. Thus, knowing this particular Defendant expressed an

interest in an appeal given these circumstances, counsel's failure to consult with Defendant about an appeal constitutes constitutionally deficient performance.[5]

## B.    Prejudice

Having found counsel's failure to consult with Defendant about an appeal constitutes deficient performance under the first prong of *Strickland*, the Court now considers the second prong–whether Defendant was prejudiced by counsel's failure to consult.  To establish prejudice under *Strickland* in a case involving failure to consult regarding an appeal, Defendant must demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

The Supreme Court explained that while a defendant can prove deficient performance by relying on evidence that he sufficiently demonstrated to counsel an interest in an appeal, "such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Flores-Ortega*,

---

[5]This is not a situation where the court's instructions on appeal can substitute for counsel's duty to consult. *See Flores-Ortega*, 528 U.S. at 479-80.  Here, counsel's testimony establishes that he knew: 1) Defendant did not get the sentence he and counsel anticipated; 2) Defendant reserved his right to appeal his sentence because they knew there may be sentencing issues that the presiding District Judge may not agree with them on; and counsel believed there was at least one ground for appeal–the Court's application of the aggravating-role enhancement under U.S.S.G. § 3B1.1.  (*Id.* at 11-13).  Based on this record, counsel was required to consult with Defendant regarding the advantages and disadvantages of filing an appeal and to make a reasonable effort to determine whether he wanted to appeal.  *See id.; see also United States v. Lovell,* 83 F. App'x 754, 758 (6th Cir. 2003) (deficient performance established where counsel failed to consult and in circumstances a rational defendant would want to appeal or specific defendant reasonably demonstrated he was interested in an appeal)*; Dennis v. United States*, Nos. 07-cv-1313, 05-cr-248, 2012 WL 4057210, at *6 (S.D. Ohio Sept. 14, 2012); *adopted by* 2013 WL 163688, at **2-3 (S.D. Ohio Jan. 15, 2013) (court's reading of right to appeal did not cure counsel's deficient performance in failing to consult regarding an appeal); *but see Granger v. Hurt*, 215 F. App'x 485, 493-94 (6th Cir. 2007) (*de novo* review of § 2254 petition, finding trial court's advice to defendant of right to appeal sufficient where no evidence defendant demonstrated he wanted to appeal or that errors were made at trial that would make a rational defendant want to appeal).

528 U.S. at 486. "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 528 U.S. at 485. The Supreme Court explained:

> As with all applications of the *Strickland* test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case. *See* 466 U.S., at 695-696, 104 S. Ct. 2052. Nonetheless, evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination. We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal. *See Hill* [*v. Lockhart*, 474 U.S. 52, 59 (1985)] (when, in connection with a guilty plea, counsel gives deficient advice regarding a potentially valid affirmative defense, the prejudice inquiry depends largely on whether that affirmative defense might have succeeded, leading a rational defendant to insist on going to trial). But, while the performance and prejudice prongs may overlap, they are not in all cases coextensive. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.
>
> By the same token, although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to "specify the points he would raise were his right to appeal reinstated," *Rodriquez* [*v. United States*, 395 U.S. 327, 330 (1969)], will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed. *See ibid.*; see also *Peguero* [*v. United States*, 526 U.S. 23, 30 (1999)] (O'CONNOR, J., concurring) ("To require defendants to specify the grounds for their appeal and show that they have some merit would impose a heavy burden on defendants who are often proceeding pro se in an initial [habeas] motion"). We similarly conclude here that it is unfair to require an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal. Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed.

*Id.* at 485-86.

14

### 1.      There were no nonfrivolous grounds for an appeal

Importantly, while a finding that there were nonfrivolous grounds for an appeal will meet the prejudice prong without further consideration, an inability to articulate nonfrivolous grounds will not bar a finding of prejudice where other factors support a finding that Defendant would have appealed had counsel reasonably consulted with him about an appeal.  *Id.* (*citing Rodriquez*, 395 U.S. at 330).  As explained below, Defendant has not met the prejudice prong based on a showing of nonfrivolous grounds.

While Attorney Stephens testified that in negotiating the Plea Agreement he specifically sought to preserve Defendant's right to appeal his sentence because he knew there may be issues to appeal if the presiding District Judge did not agree with Defendant's position at sentencing, *see* R. 484, at 5-6, 13, preservation of a right to appeal a sentence does not equate with a finding that nonfrivolous issues existed on which to appeal.  See *Ahart v. Bradshaw*, 122 F. App'x 188, 193-94 (6th Cir. 2005) (finding, in part, counsel was not deficient in failing to file notice of appeal despite reserving defendant's right to appeal in the plea agreement because no nonfrivolous grounds to appeal existed).  Defendant has not attempted to explain any nonfrivolous grounds for appeal. Instead, the only mention of the issues he seeks to appeal is in his letter to the undersigned wherein he sought to withdraw some of his claims and stated he would like to "preserve the right to appeal the leadership enhancement and his relevant conduct."  (R. 463).  He does not, however, make any argument as to why the Court's imposition of the leadership enhancement or its factual finding on relevant conduct were in error.  Nor did Defendant articulate the basis for claiming these issues were nonfrivolous at the evidentiary hearing, but instead Defendant focused on the fact that he had reserved his right to appeal an adverse finding on the leadership role.  (R. 484, at 12-13).  Thus,

Defendant has not met his burden of establishing prejudice by identifying nonfrivolous issues on appeal.

Further, the Court's own review of the record does not support a finding that nonfrivolous issues exist for appeal. As is the normal course, the Probation Office prepared a PSR prior to Defendant's sentencing. In that PSR, the Probation Officer set forth more than 7 pages of facts relating to the offense conduct, including a chart outlining the relevant conduct determination as to each Defendant. The PSR also outlined the recommended offense level computation, including a finding that Defendant's relevant conduct equated to a base-offense level of 32 and recommending both a 2-level enhancement for possession of firearms and a 4-level enhancement for Defendant having a leadership role, but also recommending a 3-level reduction for acceptance of responsibility. (PSR, at 11-12 ¶ 32-40).

Attorney Stephens testified that upon review of the PSR, he lodged an objection to the Probation Office's application of the 4-level enhancement for Defendant having a leadership role under U.S.S.G. § 3B1.1(a). (R. 484, at 7, 9-11). In his Objection, counsel argued "commentary would require this defendant to have been, in essence, the so-called "boss" of at least 5 other people, and it is unclear to me based on the facts as set forth in the report and the review of the record that Mr. Brock was the boss of this number of people."[6] (Attachment to PSR). Attorney Stephens further argued in his Objection that Defendant's role as a supplier does not mean that he is an organizer,

_____

[6]It appears counsel later recognized that a defendant need only organize or lead one of the five or more participants for the 4-level enhancement to apply, as he did not further argue this point and the law is well settled on this issue. *See* U.S.S.G. § 3B1.1(a), application note 2; *see also United States v. Begley*, Nos. 13-6431, 13-6454, 13-6478, 14-5685, 2015 WL 1036533, at *3 (6th Cir. Mar. 11, 2015) (defendant eligible for enhancement under § 3B1.1 if district court finds by preponderance of evidence that he exercised control over at least one other person during criminal activity involving at least five people).

leader or manager.  *Id.*  At sentencing, counsel further argued that the aggravating-role enhancement was not intended to apply to drug conspiracies, and reiterated the argument that being a supplier does not equate with being an organizer or leader.  (R. 441, at 5-6, 31-33).

The Sixth Circuit has affirmed the application of the aggravating-role sentencing enhancement in drug conspiracy cases where evidence established the conspiracies involved five or more participants and the defendant directed the activities of at least one person.  *See United States v. Begley*, Nos. 13-6431, 13-6454, 13-6478, 14-5685, 2015 WL 1036533, *2  (6th Cir. Mar. 11, 2015); *United States v. Dalton*, 574 F. App'x 639, 650 (6th Cir. 2014).  The Sixth Circuit explained:

> To qualify for such an enhancement, the defendant must have been the organizer or leader of "one or more other participants."  USSG § 3B1.1, cmt. n. 2. Under the Sentencing Guidelines, factors to consider when determining if a defendant is such a leader include: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  *Id.* at cmt. n. 4; *United States v. Sierra–Villegas*, [], No. 13–2513, 2014 WL 7271420, at *6 (6th Cir. Dec. 23, 2014).  When considering if an organization is "otherwise extensive," "all persons involved during the course of the entire offense are to be considered."  USSG § 3B1.1, cmt. n. 3.

Here, while Defendant objected to the 4-level enhancement for being a leader or organizer, arguing that it was not intended to apply to suppliers in a drug conspiracy, Defendant did not object to the factual allegations contained in the PSR, entitling the district court to accept them as true.  *See United States v. Host*, 390 F. App'x 460, 464 (6th Cir. 2010); *United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000) (finding court's fact-finding duty not triggered where defendant failed to assert that the objected-to recommendations in PSR were based on false information).

17

In the PSR, the factual allegations for the offense conduct identify more than five persons involved in the conspiracy, and Defendant did not object to the finding that at least five persons were involved in the criminal activity. (PSR, at 3 ¶¶ 1, 5-6). Moreover, Defendant's Plea Agreement sets forth the agreed factual basis for his guilty plea and identifies six other people involved in the conspiracy. (R. 337). Thus, the number of people involved in the criminal activity is an uncontroverted matter that the Court was permitted to accept without making specific factual findings. *See* Fed. R. Crim. P 32(i)(3)(A).

Further, the District Court's finding that Defendant directed the activities of at least one person; namely, his wife and co-Defendant Leslie Brock, was not based entirely on the Presentencing Investigation Report but also the testimony of Agent Kersey. (R. 441, at 31). Agent Kersey testified at the sentencing hearing as follows:

> Q.    And did [Defendant] direct the activity of anyone else in the course of these distribution activities?
>
> A.    Yes, he did.
>
> Q.    And who would that be?
>
> A.    One example of that would be Leslie Brock.
>
> Q.    And if you would explain to the Court how he directed Leslie Brock.
>
> A.    He directed her to answer the phone, what to tell people. And after his arrest, he continued to direct her and others on where to hide proceeds of drug transactions and how to disseminate those.

(R. 20). In addition, in the PSR, the Probation Officer explained: "Leslie Brock, wife of Brock, assisted Brock in his prescription drug trafficking. More specifically, Leslie Brock arranged multiple drug transactions for Brock, sold oxycodone pills, and traveled with Brock to obtain pills from his

sources of supply." (PSR at 4 ¶ 5). Further, the PSR provided: ". . . Brock directed criminal acts of at least his wife, Leslie Brock, who has admitted that she acted as a manager or supervisor for Brock in this conspiracy." (*Id*. at 11 ¶ 27). Based on these uncontested facts, the District Court found evidence established Defendant did more than simply act as a supplier of the drugs, but that he directed the actions of at least one person.[7]

Moreover, the District Court found the testimony of Agent Kersey established Defendant directed the actions of more people than just Leslie Brock. (R. 441, 33-36). Specifically, Agent Kersey discussed incidents where Defendant instructed other drug distributers not to sell drugs to specific people for a variety of reasons. (R. 441, at 11-20, 33-36). The Agent testified that in his experience the ability to direct other drug dealers not to sell to particular people requires a person to hold some level of control over the other distributors. (R. 441, at 15-20). The District Court also found the Agent's testimony regarding a conversation Defendant had with a confidential source wherein Defendant pointed his finger like he was shooting a gun and discussed a meeting he had with someone who begged his forgiveness for being a "rat," as sufficient evidence to indicate Defendant was sending messages that if you step out of line, Defendant could exercise violence over you. The District Court found the application of the leadership enhancement was not a close question, as the evidence established Defendant "was the boss of this particular organization." (R. 441, at 34-36).

---

[7]This factual finding is further supported by Leslie Brock's Plea Agreement, wherein she agreed that her role in the conspiracy was to assist[] Todd Brock in this drug trafficking operation by: selling oxycodone pills; arranging drug transactions; and by traveling with Todd Brock to obtain pills from his sources of supply." (R. 261, at 2 ¶ 3(d)). She also admitted that "she acted as a manager or supervisor for Todd Brock in this drug distribution network." (*Id*. at ¶ 3(e)).

Thus, the issue of whether the aggravating-role enhancement applied to Defendant is frivolous on this factual record. *See Anders v. California*, 386 U.S. 738, 744 (1967) (defining "not frivolous" as where "any of the legal points [are] arguable on their merits").   First, contrary to Defendant's argument at sentencing, the Sixth Circuit has affirmed the application of the aggravating-role enhancement to defendants in drug conspiracies. *See Begley*, 2015 WL 1036533, at **2-3 (applying 4-level enhancement for aggravating role by defendant in drug conspiracy because evidence established by preponderance of evidence that defendant exercised control over at least one person).   Second, based on the factual record before the presiding District Judge, Defendant's legal argument that the aggravating role enhancement did not apply to his circumstance is not disputable on its merit, as the record established by a preponderance of the evidence that Defendant directed the activity of at least one person in a conspiracy involving at least five participants.

Further, while Defendant states he also seeks to appeal the Court's finding of relevant conduct, *see* R. 463, he waived this issue for appellate review by not objecting to the calculation contained in the PSR prior to sentencing. *See United States v. Saavedra-Ibanez*, 247 F. App'x 724, 728-29 (6th Cir. 2007) (waived issue for appellate review by failing to object at sentencing); *United States v. Guillory*, 100 F. App'x 536, 539 (6th Cir. 2004) (failure to object to Guidelines calculation contained in PSR forfeits claims in absence of plain error that affects substantial rights); *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) ("[a] defendant challenging the application of the sentencing guidelines 'must first present the claim in the district court before [it] can be entertain[ed] on appeal.'") (*quoting United States v. Nagi*, 947 F.2d 211, 213 (6th Cir.1991)).

Thus, because Defendant did not object to the Probation Office's calculations of relevant conduct before the District Court, any appeal of this issue would be limited to a plain error review,

20

which under this uncontroverted factual record would be frivolous.  *See United States v. Pearson,* 430 F. App'x 431, 434 (6th Cir. 2011) (finding that where defendant did not object to drug quantities contained in the PSR, the district court did not abuse its discretion in relying on those undisputed drug quantities to determine sentence); *United States v. Woods*, 367 F. App'x 607, 611 (6th Cir. 2010) (failure to object to relevant conduct limits appellate review to plain error)*; United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003) (finding no plain error and holding "that a district court may properly rely exclusively on the PSR for drug quantity when the drug quantity contained therein is not in dispute").

### 2.    Defendant did not promptly express a desire to appeal

The Court also finds Defendant did not promptly express a desire to appeal.  While Defendant testified at the evidentiary hearing that he wanted to appeal his sentence "from day one" and "there was never a time when he did not want to appeal," (*see* R. 484, at 33-34), there is no credible evidence that he timely expressed this interest.

First, as explained above, the Court does not credit Defendant's testimony that he instructed counsel to file an appeal after the sentencing hearing prior to his removal from the courtroom. Defendant admitted he was only in the courtroom for a few minutes after sentencing and that he and counsel did not talk much.  (*Id*. at 31-32).  Defendant testified that he asked counsel if they were "going to appeal this," and counsel allegedly replied "I'll take care of it."  (*Id*.).  However, counsel testified that if Defendant asked him to appeal he did not hear it, which contradicts Defendant's statement that this exchange occurred.  (*Id*. at 14).  Counsel also explained that it is his practice to write down all of his clients' requests, and a review of his notes did not reveal a request from Defendant that an appeal be filed.  (*Id*. at 16-17).  Further, Mr. Stephens testified that had he heard

Defendant instruct him to file an appeal, he would have done so regardless of whether he believed there were any meritorious issues to appeal. (*Id*. at 14, 17-18). Defendant does not allege any other conversation occurred between him and counsel regarding an appeal after his sentencing. (*Id*. at 34). The Court finds the testimony of counsel on this point to be more credible. Counsel is a well-seasoned attorney in this District, has filed notices of appeal in the past, and was adamant that if he had heard Defendant instruct him to appeal, he would have done so. (*Id*. at 14, 16, 17-18).

Further, while Defendant's sister, Diana Warren, testified at the evidentiary hearing that she tried to call Attorney Stephens on Defendant's behalf on multiple occasions to inquire about the appeal, she admitted the calls were all placed after January 6, 2014. (*Id*. at 25-26). Thus, her attempts to call Attorney Stephens were made at least three months after Defendant was sentenced and more than two months after the fourteen-day period allotted for the timely filing of a notice of appeal. (*Id*.). In addition, although Defendant called Ms. Warren the night he was sentenced, he did not talk to her about an appeal until "later on." (*Id*. at 26-27). And while she learned from Defendant's letters and calls that he was interested in appealing, she did not provide any dates on which she first learned of Defendant's desire to appeal. (*Id*. at 24). Thus, her testimony does not support a finding that Defendant promptly expressed his desire to appeal.

Further, at his sentencing, the Court provided Defendant with a copy of the form informing him of his right to appeal that was also read to him in open court. (R. 339). This form provided information regarding how to appeal and informed Defendant that a notice of appeal must be filed within fourteen days. (*Id*.). It is reasonable to expect that had Defendant wanted to appeal, he would have specifically discussed the issue with counsel within the fourteen-day time frame.

22

Defendant testified that he did not contact counsel immediately after sentencing because he thought counsel was filing his appeal and that counsel would contact him to discuss it after Defendant was transferred to his designated facility. (R. 484, at 32-33, 39-41). The Court does not find this statement credible. Counsel and Defendant both testified that the environment in the courtroom was emotional after the sentencing hearing as they were both somewhat shocked by the sentence imposed. Defendant stated he was only in the courtroom for a few minutes after the sentencing, and he admitted he and counsel did not talk much during this time. (*Id*. at 31-32). As discussed above, the Court does not credit Defendant's testimony that he had a specific discussion with counsel regarding an appeal after the sentencing, and both counsel and Defendant testified they did not have any further discussions after Defendant left the courtroom. (*Id*. at 15, 34).

Instead, Defendant testified that his first contact with counsel after the sentencing hearing was in January 2014 when he sent counsel a letter.[8] (*Id*. at 37-38, 40-41). Defendant further testified he was not concerned at first about not hearing from counsel, but by mid-December, he started to get worried that counsel had not contacted him. (*Id*. at 41). Yet, Defendant still did not take immediate action. Instead, Defendant testified that he waited until he got settled and had money in his prison account before he sent counsel a letter. (*Id*. at 40-41).

The only letter of record from Defendant to Attorney Stephens is dated January 6, 2014. (R. 437-1). The letter states, in part, "you never filed a notice of appeal for my sentence and now I

---

[8] Defendant explained that he arrived at FCI Lorretto, where he is serving his sentence, in November 2013, and that his money did not catch up to him until then. (R. 484, at 40-41). Thus, he claims he was unable to contact counsel prior to his arrival at FCI Lorretto because he did not have any money on his account to buy stamps or make calls. (*Id*.). However, he admitted to calling his sister the night of sentencing, which belies his statement that he was unable to make any calls before arriving at FCI Lorretto. (*Id*. at 38).

cannot appeal it. WHY?" (*Id*.). Defendant also requested in this letter that counsel forward to him his case file. (*Id*.). While the record is not clear as to when Defendant first learned that a notice of appeal had not been filed in his case, his letter to counsel demonstrates that he knew by at least January 6, 2014.[9]

Despite knowing by January 6, 2014, that an appeal had not been initiated, there is no evidence that Defendant did anything further for more than three months.[10] While Defendant made attempts to obtain a copy of his docket sheet, sentencing transcript and his attorney's case file on April 28, 2014, May 23, 2014, June 2, 2014, and September 2, 2014, Brock has not explained why he needed these documents to proceed as he already knew on January 6, 2014, that an appeal had not been filed. (*See* R. 409, 413, 432, 437-1, at 2). Instead, Defendant waited until October 1, 2014, to file the pending § 2255 motion, presenting claims that counsel provided ineffective assistance.[11] (R. 436). Thus, despite knowing by at least January 6, 2014, that a notice of appeal was not filed, Defendant waited nearly 10 months before filing his § 2255, asserting that counsel failed to file a

---

[9]Under Rule 4(b)(4) of the Federal Rules of Appellate Procedure, a district court can extend a criminal defendant's deadline for filing a notice of appeal for a period not to exceed 30 days from the expiration of the original 14-day time period. Here, the Judgment was entered October 7, 2013, thus Defendant's notice of appeal was due no later than October 21, 2013. However, the district court had authority to extend that deadline by 30 days, to wit November 20, 2013. Thus, had Defendant made some effort to express his desire to appeal prior to November 20, 2013, he had an avenue available to him to do so despite the 14-day period having elapsed.

[10]Defendant's sister testified that sometime after January 6, 2014, she called Mr. Stephens's office at least three times to help her brother in regards to an appeal, but could not get him to return her calls. (R. 484, at 25-26).

[11]Although the Clerk of Courts received and docketed the Motion on October 6, 2014, it is deemed filed on the date Defendant deposited it in the correctional institution's internal mailing system. *See* Rule 3(d) of the Rules Governing Section 2255 Proceedings in the United States District Courts. Here, the *pro se* Motion was signed on October 1, 2014. (*See* R. 436, at 13). Applying the prisoner mailbox rule, the Court deems the Motion To Vacate to have been filed on October 1, 2014. *See Houston v. Lack*, 487 U.S. 266, 273 (1988).

notice of appeal.  *See Johnson*, 364 F. App'x at 977 (facts suggested improbable that defendant would have timely appealed where he knew little chance of success and although informed of right to appeal and time frame for doing so, defendant waited two to three months after sentencing to contact counsel and almost a full year after sentencing to file a § 2255); *Richards v. United States*, 301 F. App'x 454, 459 (6th Cir. 2008) (no showing reasonably probable that defendant would have appealed where no nonfrivolous grounds for appeal, defendant believed government would move to reduce his sentence and defendant did not express a desire to appeal within appeal period); *Cross v. United States*, 73 F. App'x 864, 866 (6th Cir. 2003) (denying § 2255 where defendant waited nearly eight months to file a § 2255 for failure to file an appeal and did not seek to file belated appeal in interim); *Smith v. State of Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 435 (6th Cir. 2006) (applying *Flores-Ortega* to § 2254 and stating rebuttable presumption that defendant would not have timely appealed if period between when he learned of decision and when he attempted to appeal is greater than period permitted for timely filing of an appeal); *United States v. Whitson*, No. 6:12-cv-67-DCR, 2015 WL 520531, at *4 (E.D. Ky. Feb. 9, 2015) (finding no prejudice shown as no nonfrivolous grounds for appeal and waited more than seven months to file § 2255 despite being informed of deadline for filing an appeal); *Polson v. United States*, No. 1:07-cv-698, at *4 (W.D. Mich. July 15, 2008) (prejudice shown by nonfrivolous ground and filing of notice of appeal after deadline but before time within which he could have moved for an extension).

### 3.     Other factors demonstrating Defendant would have timely appealed

It remains the Defendant's burden to demonstrate prejudice under *Strickland*.  Here, Defendant has attempted to meet his burden by arguing that counsel knew Defendant had expressed an interest in appealing if Judge Reeves did not agree with their position on sentencing and knew he

had preserved his right to appeal the leadership-role enhancement. However, as the Supreme Court explained, "while a defendant can prove deficient performance by relying on evidence that he sufficiently demonstrated to counsel an interest in an appeal, 'such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'" *Flores-Ortega*, 528 U.S. at 486. Defendant has not met his burden of demonstrating by a preponderance of the evidence that there was a reasonable probability that he would have timely appealed had he been properly consulted about an appeal, given: 1) Judge Reeves's well-articulated factual findings that the leadership enhancement applied because a preponderance of the evidence demonstrated Defendant directed the actions of at least one person; 2) that Judge Reeves imposed a within-Guidelines sentence despite his statements that he considered a sentence above the Guidelines range due to Defendant's criminal history category not accurately reflecting his past criminal conduct; 3) the favorable aspects of the Plea Agreement, including the application of the greatest reduction available for acceptance of responsibility as well as the dismissal of charges carrying a higher mandatory minimum or that mandated a consecutive term be imposed; 4) the absence of evidence that Defendant would have timely appealed despite being notified at sentencing that he had 14 days to file a notice of appeal; and 5) the lack of any nonfrivolous issues. *See Johnson*, 364 F. App'x at 977 (facts suggest an improbability that but for counsel's failure to consult, defendant would have timely appealed because defendant knew any appeal had little chance of success; defendant waited two to three months to contact counsel despite knowing limited time frame for filing appeal, and waited almost a year after sentencing before filing § 2255); *Whitson*, 2015 WL 520531, at *4 (defendant failed to establish prejudice prong where no evidence of nonfrivolous grounds for appeal, did not promptly express desire to appeal, and waited

seven months to file § 2255).  Accordingly, Defendant's claim fails under the prejudice prong of *Strickland*.

### III.    Conclusion and Recommendations

For the reasons stated herein, **IT IS RECOMMENDED** that:

1.      Defendant's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255 (R. 436) be **denied;**

2.      a certificate of appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3)      Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(4)      this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b).  Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 24th day of July, 2015.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\habeas petitions\evidentiary hearing\12-53 Brock R&R.final.wpd